# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JANE DOE,

      Plaintiff,

                              CASE NO.: 8:21-CV-01245-CEH-CPT

vs.

NEW COLLEGE OF FLORIDA,
a Public University and Member
of the State University System;
and New College of Florida Board
Of Trustees, a Florida Public Entity,

      Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, NEW COLLEGE OF FLORIDA and NEW COLLEGE OF FLORIDA BOARD OF TRUSTEES (collectively "NCF"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby file their Motion for Summary Judgment and supporting Memorandum of Law, and state as follows:

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, JANE DOE, has sued NCF alleging two (2) counts of negligence and violation of Title IX. Plaintiff alleges NCF was negligent in its prevention/protection of Plaintiff, and Plaintiff "was subject to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to prevent and properly investigate the rape, abuse, and harassment." [DE 11 ¶¶ 30, 36(d)].

Plaintiff alleges NCF is at fault under Title IX and negligence for the sexual assault by another student, Cheikou Kane, on May 13, 2017. After the sexual assault, Plaintiff alleges Cheikou Kane stalked her, causing her grades to suffer dramatically. Plaintiff unenrolled from New College of Florida in May 2018.

Plaintiff's Title IX claims fail, because she cannot establish any facts in favor of three (3) of the necessary elements for a Title IX damages claim. Plaintiff has no evidence that an appropriate person with the New College of Florida Board of Trustees had actual knowledge. Plaintiff has no evidence that an appropriate person had knowledge of the "Tour de Franzia" or subsequent alleged stalking, before it happened. When Plaintiff finally disclosed her alleged sexual assault, NCF offering a "no contact" order was not clearly unreasonable under the circumstances. Regardless, after the disclosure, Plaintiff was not subject to any further harassment or discrimination, because she unenrolled from New College of Florida.

Plaintiff's negligence claims fail, because all her theories of negligence are discretionary in nature, rather than operational. Florida has only waived sovereign immunity for operational negligent acts. The one arguable operational act at issue by an unnamed TA did not fall within that TA's scope and course of employment. Therefore, NCF is not vicariously liable for that TA's conduct. Any acts by NCF were remote in time such that they cannot be said to have been the but-for cause of Plaintiff's alleged sexual assault. This court lacks subject matter jurisdiction over the state-law negligence claims under the Eleventh Amendment of the United States Constitution.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. The Facts Surrounding Plaintiff's Alleged Sexual Assault

Plaintiff was a student of New College of Florida from 2015 to 2017. At the conclusion of her sophomore year, one of Plaintiff's friends invited her to a party on campus involving other students, which the students named "Tour de Franzia." [DE 87, Deposition of Plaintiff, 64: 15-21]. The Tour de Franzia took place on May 13, 2017. Plaintiff's received Facebook invite (marked Going) states it began at 6 pm EDT, on Saturday, May 13, 2017, and describes the event as:

> LOL, have you ever fallen off ur bike and busted ur ass? Have you ever been so drunk that you made bad choices you didn't even know you had? You want to do both of these for like 2hrs in front of all of your friends and probably also fuck up your bike and 6 others? . . . This shit starts at the bike shoppe and ends IN the bay.

DE 87, Deposition of Plaintiff, 70: 2-5; DE 88, Facebook Event Invite]. Plaintiff could not recall, on deposition, which students organized the party. [DE 87, Deposition of Plaintiff, 65: 18-24]. Plaintiff believed one of the students that first gave her wine was a "teacher's assistant." [DE 87, 65: 25, 66: 1-3]. Plaintiff could not recall her name. [DE 87, 66: 4-9].

The participants divided into "teams," and Cheikou Kane ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ile drinking boxed wine on and off campus. [DE 87, 71: 2-9]. Plaintiff rode with Cheikou Kane and the rest of her team throughout the race. [DE 87, 110: 20-25, 111: 1-2]. Plaintiff was nineteen (19) years old at the time, and she drank the wine as she rode along with

3

other students. [DE 87, 72: 23-25, 73: 1-8]. Plaintiff herself had recently won the student-body presidential election. [DE 87, 85: 13-20].

At the end of the race, Plaintiff was intoxicated, but still able to "sing, dance, swim," and "walk by herself." [DE 87, 83: 22-25, 84: 1-4]. Plaintiff and other participants moved to the benches, and Cheikou approached her with a red Solo cup, and she accepted and drank. [DE 87, 113: 17-23]. "[A]s soon as people started to get up and leave, [Plaintiff] started to feel very ill, and so [she] also got up and walked with them . . . ." [DE 87, 115: 22-24]. Cheikou Kane helped her walk back to campus, where they walked across campus to an on-campus convenience store. [DE 87, 118: 20-22, 119: 6-11]. Cheikou Kane took her inside his apartment on campus. [DE 87, 120: 11-24].

No NCF employee has the job to monitor any Facebook accounts outside of NCF-official accounts. [DE 89, Deposition of Rebecca Caskey, Part 1, 61: 18-19]. Plaintiff did not tell any administrators about the "Tour de Franzia," before the event, including after she was invited and after she received the Facebook invite. [DE 87, 94: 22-25, 95, 96: 1-14]. Dr. Robin Williamson, Dean of Student Affairs, has never heard of the "Tour de Franzia" in the three years that she has been working at NCF, until this case was filed. [DE 91, Deposition of Robin Williamson, 148: 14-25, 149: 1]. The New College Police regularly patrolled the campus and addressed policy violations as they saw them. [DE 91, 155: 12-19]. Dr. Donal O'Shea, President of New College of Florida, had never heard of the "Tour de Franzia." [DE 92, Deposition of Donal O'Shea, Part 2, 159: 11-19]. Dr. Mark Steir, former Senior Associate Dean of Students,

also did not know about the "Tour de Franzia." [DE 93, Deposition of Mark Steir, 11: 20-22, 79: 15-20].   Michael Kessie, the former Chief of Police at New College of Florida, also was unfamiliar with the "Tour de Franzia." [DE 94, Deposition of Michael Kessie, 63: 23-25, 74: 12-14, 21-23].

Duane Khan, Ph.D., was Plaintiff's psychological counselor. Dr. Khan stated the "Tour de Franzia" is a student-run event, and that every year the location changes so people do not "bust it up." [DE 95, Deposition of Duane Khan, Part 1, 12: 1-16]. The route also changed every year. [DE 96, Deposition of Duane Khan, Part 2, 71: 8-19]. Plaintiff told Dr. Khan during one of their counseling sessions about the "Tour de Franzia" and the sexual assault. [DE 96, 71: 1-25, 72: 1-12]. Dr. Khan stated: "The Tour de Franzia has never been and was never on a list of approved events by student affairs." [DE 96, 30: 6-19, 68: 8-12]. As a counselor, Dr. Khan is exempt from the mandatory reporting requirements under Title IX. [DE 95, 110: 19-21; DE 91, 36: 18-23].

Rebecca Caskey (formerly Sarver) became the Title IX Coordinator on May 7, 2017, before the "Tour de Franzia" took place on May 13, 2017. [DE 97, Rebecca Sarver Employment Action Form]. Ms. Caskey did not know about the "Tour de Franzia" either. [DE 89, 55: 15-18, 56: 14, 20-21, 60: 8-9]. Ms. Caskey elaborated "[T]he role of administrators only goes so far, and there are things that happen on campus that we don't know about, even having residential staff." [DE 89, 56: 2-9].

During the next school year (ending May 2018), Plaintiff believed she was being stalked by Cheikou Kane. [DE 87,135: 8-11]. Plaintiff failed all but one of her courses

5

in the following school year [DE 87, 33: 20-25, 34: 1-10]. However, during this time, she had not told anyone about the sexual assault, other than her personal friends and in confidential counseling. [DE, 87, 92: 13-25, 93: 1-7].

███████████████████████████████

█████ Plaintiff asked to meet Rebecca Caskey, to ask how Ms. Caskey was going to address Title IX in the future as the new coordinator. [DE 98, Deposition of Rebecca Caskey, Part 2, 165: 17-21, 175: 6-12]. Ms. Caskey and Plaintiff "discussed the Title IX policy and how [Ms. Caskey] was handling Title IX as Title IX coordinator." [DE 98, 165: 14-16].

The earliest Plaintiff alleges to have told someone affiliated with New College of Florida about the rape, other than her psychological counselor, was in May 2018 when she spoke with Dean Robin Williamson. [DE 87, Deposition of Plaintiff 92: 13-25, 93: 1-7]. Beforehand, Plaintiff and Dr. Williamson had spoken with each other frequently throughout the school year. [DE 99, Plaintiff's Answers to Second Interrogatories, at 14-15]. This conversation allegedly took place approximately one week before the Spring 2018 graduation, where Cheikou Kane was about to graduate. [DE 99, at 15]. Plaintiff alleged that Dr. Williamson "spoke of not being able to do anything at the time, but advised she could file a 'No Trespassing on Campus' or an order like this for the following year." [DE 100, Plaintiff's Answers to First Interrogatories, at 9]. Plaintiff clarified that she could not recall if she asked Dr. Williamson to file a complaint. [DE 87, Deposition of Plaintiff, 100: 14-25, 101: 1-6].

6

In response, Plaintiff alleges leaving Dr. Williamson's office, walking to the Registrar's office, and unenrolling from New College of Florida. [DE 99, at 15].

Dr. Williamson would <u>not</u> say "there was nothing [she] could do for [Plaintiff] as to her complaints of being sexually assaulted or harassed or stalked other than put a no-contact order in on [Cheikou Kane] for the following semester." [DE 91, 133: 4-19]. If Cheikou Kane were still an enrolled student, Dr. Williamson would have explained the Title IX policy, Dr. Williamson would have filed a report (if requested by Plaintiff), and would have given Plaintiff all the options available to her, including interim measures for Cheikou Kane. [DE 91, 133: 4-19].

**B.  New College of Florida Regulations and Title IX**

In May 2015, two individuals, one of whom was an NCF student, passed away in the dorms from a Fentanyl overdose. [DE 101, Deposition of Donal O'Shea, Part 1, 107: 16-24, 108: 1-2]. Dr. Donal O'Shea, the NCF President, commissioned a drug and alcohol task force of administrators, faculty, students, alumni, and board members to review and strengthen NCF's alcohol, drug, and substance abuse policies. [DE 101, 109: 2-11]. The task force report was completed by the start of the fall semester of 2015. [DE 95, 101: 7-11]. The task force recommended revising the policies and procedures related to alcohol violations. [DE 102, at 5]. The NCF regulations were updated by May 2017. [DE 102, at 2].

Afterwards, the school implemented the task force recommendations. [DE 95, 91: 14-25, 92, 93: 1-16; DE 96, 6: 4-11]. These recommendations included a forum in

the fall of 2015 for students to give their feedback on recommendations. [DE 96, 6: 4-11], as well as provide answer and questions sites, a list of online resources, and resources related to wellness, for the students. [DE 96, 6: 22-25, 9: 4-25, 14: 3-11]. NCF updated the Counseling & Wellness Center to provide more information about drug and alcohol resources and created a position for health educator, to educate students about alcohol and Title IX. [DE 96, 28: 22-25, 29: 1-12]. Additionally, the Title IX Coordinator received a highly-accessible office in the dorms. [DE 96, 60: 4-15].

Allegations of sexual assault are referred to the Title IX coordinator, who conducts investigations according to the NCF published policy. [DE 91,: 13-20]. Ms. Caskey stated that "opening an investigation is not necessarily automatically prompted by a report." [DE 98, 171: 20-22]. Dr. Erin Robinson was the interim Title IX Coordinator for New College of Florida. [DE 103, Deposition of Erin Robinson, 7: 2-25, 8: 1-4]. During that time, she trained ten to twelve different staff and faculty at New College of Florida who could conduct Title IX investigations. [DE 103, 11: 18-25, 12: 1-16]. After December 2016, Dr. Robinson also added educational outreach to the role, so that it was both educational and informative. [DE 103, 31: 9-16]. Rebecca Caskey conducted trainings of all staff when she became Title IX Coordinator. This amounted to 340 to 350 employees. [DE 89, Deposition of Rebecca Caskey, Part 1, 10: 12-21]. Ms. Sarver also trained Title IX investigators and brought in external trainers for Title IX investigators. [DE 89, 11: 7-12].

When Dr. Williamson became Dean of Student Affairs, she reviewed all policies related to drug or alcohol use and determined they were in line with best practices in the field. [DE 91, 57: 14-21]. Dr. Williamson also brought in Dr. Peter Lake and representatives from the Association of Title IX Administrators to do comprehensive Title IX training for faculty, staff, and students. [DE 91, 101: 16-25].

The New College of Florida Regulations Manual prohibits consumption of alcohol by persons less than 21 years of age anywhere on campus, providing alcohol to anyone under 21, coercing someone into drinking, and putting themselves or others in danger by way of their intoxication. [DE 104, NCF Regulations Manual, Chapter 6, at 2]. NCF Regulations refer instances of Sexual Battery/Rape and Sexual Misconduct to Title IX for procedures for investigation, adjudication, remedial measures, and related matters. [DE 104, at 12, 13].

Any person who wishes to file a complaint of discrimination or harassment may do so by submitting a complaint to the Title IX Coordinator or its designee, the Dean of Student Affairs, or the General Counsel. [DE 105, NCF Regulations Manual, Chapter 3, at 6]. The complaint must contain a detailed description, including dates, times, locations, names of witnesses, and supporting documentation. [DE 105, at 6]. The Title IX Coordinator may implement interim measures, effective until the investigation ends and outcome decided. *Id.* Interim measures include "no contact" orders. [DE 105, at 7]. If a victim makes a complaint, the title IX Coordinator or its designee must conduct an investigation. [DE 105, at 5, 8].  Both the complainant and respondent must be informed of any remedial action. [DE 105, at 7].

An investigation must include meeting with the complainant, informing the respondent of the complaint, summarizing the allegations, and providing the respondent with a written notice of the complaint that includes a summary of the allegations of the complaint. [DE 105, at 8]. The investigator must also collect and review written documents related to the complaint, interview the complainant and respondent, identify, and interview witnesses, and collect other such evidence as may be relevant to the investigation. [DE 105, at 9]. At the conclusion of the investigation, the investigator must prepare a written report. *Id.* The respondent is given an opportunity to respond to the allegations and provide a written response. *Id.* Both sides have the right to have an attorney or non-attorney advisor present during interviews. *Id.* The report must determine whether any policies have been violated and recommend disciplinary and/or remedial action. *Id.* The Report of Findings may be appealed by either party within ten (10) business days. *Id.* Disciplinary actions must be in accordance with College regulations, collective bargaining agreements or the Student Code of Conduct. *Id.* at 10. Disciplinary actions can range from counseling to academic dismissal. *Id.* at 11. Further, NCF publishes information about Title IX on its website as well. [DE 106, Archived Title IX Information; DE 96, 9: 4-25].

## III.   MEMORANDUM OF LAW AND ARGUMENT

### A. Title IX Claims

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). *Gebser v. Lago Vista Indep. Sch. Dist.* established the following standard for damages claims in Title IX cases: "A damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's program and fails to adequately respond." *Davis f. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Additionally, "the response must amount to deliberate indifference to discrimination." *Id.*

"Under Title IX, the standard for finding a school liable 'for student-on-student harassment . . . is far more rigorous than a claim for teacher-on-student harassment.'" *Garrett v. Univ. of S. Fla. Bd. of Trsts.*, 824 Fed. Appx. 959, 964 (11th Cir. 2020) (quoting *Hill v. Cundliff*, 797 F. 3d 948, 968 (11th Cir. 2015)). A Title IX claim for student-on-student sexual harassment requires six elements:

- First, the defendant must be a Title IX funding recipient;
- Second, an "appropriate person"—one with the authority to address the harassment, must have "actual knowledge of discrimination in the recipient's programs.'";
- Third, the recipient must respond with deliberate indifference to the known acts of harassment in its programs;
- Fourth, the recipient's deliberate indifference must "subject the plaintiff to further discrimination";
- Fifth, the harassment known of must be "severe, pervasive, and objectively offensive"; and
- Sixth, the harassment must "effectively bar the victim's access to an educational opportunity or benefit."

*Id.* at 964.

### a. **Elements Not in Dispute**

Defendants <u>do not</u> dispute the first, fifth, and sixth elements, for this motion for summary judgment only. Defendants are entitled to summary judgment because Plaintiff cannot muster a disputed issue of fact for the second, third, and fourth elements, which are more fully set forth below.

### b. **Second Element: Appropriate Person with Actual Knowledge**

For the second element, requiring actual notice, the "appropriate person" "is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *J.S. v. Houston Cnty. Bd. of Educ.*, 877 F. 3d 979, 987 (11th Cir. 2017). "The official with notice . . . must be 'high enough' up the chain of command that his or her acts constitute an official decision by the school district itself not to remedy the misconduct." *Id.*

Plaintiff has brought forth no evidence that anyone associated with the Board of Trustees had actual knowledge. Plaintiff has brought forth no evidence that any members of the Board of Trustees had any knowledge. In *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, the 11th Circuit affirmed the dismissal of a Title IX claim against the Board of Regents, because the Plaintiff did not allege any "appropriate person" with the Board of Regents had actual knowledge. 477 F.3d 1282, 1293-94 (11th Cir. 2007). The President of the University was not an "appropriate person" as to the Board of Regents. *Id.* For that reason, summary judgment should be entered as to the Board of Trustees on Plaintiff's Title IX claim.

Plaintiff's case also fails as to New College of Florida. Every single person deposed has stated unequivocally that they did not know of the "Tour de Franzia." Dr. Robin Williamson, Dr. Donal O'Shea, Dr. Mark Steir, Michael Kessie, and Rebecca Caskey all testified they were unfamiliar with the "Tour de Franzia" at the time, in May 2017. *Supra*, at 5-6. Dr. Duane Khan (Plaintiff's psychological counselor) clarified that it was solely a student-run event, and students change the location and time so the administrators would not "bust it up." [DE 95, Deposition of Duane Khan, Part 1, 12: 1-16]. As former Title IX Coordinator, Ms. Caskey elaborated: "[T]he role of administrators only goes so far, and there are things that happen on campus that we don't know about, even having residential staff." [DE 89, Deposition of Rebecca Caskey, Part 1, 56: 2-9].

Plaintiff appears to be coming forward with a "constructive knowledge," theory of the case. But that does not lead to Title IX liability. Title IX concerns itself only with "actual knowledge." The "appropriate persons" "must have knowledge of *sexual assaults* and be deliberately indifferent to those *sexual assaults*." *Shank v. Carleton College*, 232 F. Supp. 3d 1100, 1109 (D. Minn. 2017) (emphasis in original). The *Shank* court held allegations of a college's tolerance of underage and excessive drinking did not state a claim under Title IX. *Id.* "A recipient cannot be held liable merely because it *should* have known of sexual assaults." *Id.* (emphasis in original) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). "Tolerating students' misuse of alcohol— even with knowledge that such misuse increases the risk of harmful behaviors such as

sexual assault—is simply not the same thing as actual knowledge of sexual assault." *Id.*

Regardless, there is no evidence that New College of Florida tolerated misuse of alcohol by minors. New College of Florida's code of conduct banned underage drinking and furnishing alcohol to underage drinking. *Supra* at 12-13. The only person, other than Plaintiff's counselor in confidential counseling, that Plaintiff alleges telling about the sexual assault and drinking is the Dean of Student Affairs, Dr. Robin Williamson. Plaintiff alleges only telling Dr. Williamson well after the sexual assault and well after the stalking. Plaintiff alleged unenrolling from New College of Florida immediately after telling Dr. Williamson. The "appropriate person," must have notice ahead of the sued upon harassment/discrimination. *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1255 & 1257 (11th Cir. 2010) ("whether the . . . complaints were sufficient in substance to alert [official] to the possibility of Doe's sexual assault"). Therefore, Dr. Williamson was not an "appropriate person," because, by that time, the alleged Title IX violations had already occurred.

Plaintiff alleges that a "TA" furnished her alcohol initially at the "Tour de Franzia." Plaintiff could not recall this person's name. In *Hill v. Cundiff*, the Eleventh Circuit held a teacher's aide was not an "appropriate person." 797 F.3d 948, 971 (11th Cir. 2015). Plaintiff's anonymous TA is nowhere near an official high enough to be an "appropriate person."

The only exception appears to be when a school has "actual knowledge of at least a significant risk of sexual abuse." *Ross v. Corporation of Mercer Univ.*, 506 F. Supp.

14

2d 1325, 1348 (M.D. Ga. 2007). In other cases, cited in *Ross*, the significant risk was in the form of knowledge of prior instances of abuse by the perpetrator. *Ross* held actual knowledge of a perpetrator's substance abuse did not arise to a "significant risk of sexual abuse." *Id.* As discussed, *supra*, the administrators and New College of Florida police did not know of the "Tour de Franzia." The administrators did not know of the party that Plaintiff would allege caused a "significant risk" of a sexual assault.

In summary, Plaintiff offers no "appropriate persons" as to New College Board of Trustees. Plaintiff's anonymous TA is not high enough to be considered an appropriate person. No one had knowledge of the "Tour de Franzia" in May 2017. Plaintiff alleges telling the Dean of Student Affairs, who would be an "appropriate person," but for the fact that all of the alleged Title IX violations had already occurred and Plaintiff alleges no further violations.

### c. Third Element: Defendants Must Act with Deliberate Indifference to Known Acts

For the third element, a finding of deliberate indifference requires a finding that the defendant's "response is clearly unreasonable in light of the known circumstances." *Garrett v. Univ. of S. Fla. Bd. of Trsts.*, 824 Fed. Appx. 959, 964 (11th Cir. 2020). "This standard is 'rigorous and hard to meet.'" *Id.* "A school must simply respond to 'known peer harassment in a manner that is not clearly unreasonable.'" *Id.* (emphasis supplied). A school does not need to "remedy" peer harassment to avoid liability. *Id.* "[C]ourts can 'identify a response as not clearly unreasonable as a matter

of law.'" *Id.* The Supreme Court in *Davis v. Monroe Cty. Bd. of Educ.*, stated "courts should refrain from second-guessing the disciplinary decisions made by school administrators." 526 U.S. 629, 648 (1999). "Officials need not adopt a victim's 'particular remedial demands' to avoid liability." *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000, 1007 (S.D. Fla. 2020) (quoting *Davis*, 526 U.S. at 648). "[M]ere 'failure to comply with [federal] regulations . . . does not establish the requisite actual notice and deliberate indifference.'" *Id.* (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 291-92 (1998)).

The only alleged "deliberate indifference" Plaintiff has offered is Dr. Williamson's alleged response to Plaintiff in May 2018. Plaintiff testified that she could not recall making a complaint. All Plaintiff alleges is telling Dr. Williamson of the sexual assault. [DE 99, Plaintiff's Answers to Second Interrogatories, at 15]. In response, Plaintiff alleges Dr. Williamson "spoke of not being able to do anything at the time, but advised she could file a 'No Trespassing on Campus' or an order like this for the following year." [DE 99, at 15].

In *Garrett*, the 11th Circuit noted that in cases in which it found potential Title IX liability, "the school responded to a report of sexual assault by effectively doing nothing." 824 Fed. Appx. 959, 965 (11th Cir. 2020). Further, in *Garrett*, "USF had no control over the off-campus assault or reason to believe that it would happen." *Id.* (noting "the harassment must take place in a context subject to the school district's control"). In *Garrett*, USF offering a "no contact" order and suspending the student;

16

the 11th Circuit found it was not clearly unreasonable. *Id.* The *Garrett* court further noted USF could not impose other disciplinary measures without a hearing. *Id.*

Similarly to *Garrett*, Plaintiff's version of events here do not amount to "deliberate indifference." In both situations, New College of Florida and USF offered "no contact" orders. Here, Cheikou Kane was approximately a week away from graduating. As discussed, *supra*, before providing non-interim measures, NCF would have to allow time for an investigation and appeal, while allowing Cheikou Kane an opportunity to be represented by counsel. Cheikou Kane was a week away from graduating, according to Plaintiff.

In summary, even under Plaintiff's version of events, New College of Florida did not react in a way that is clearly unreasonable. New College of Florida offered a "no contact" order, and an Eleventh Circuit 2020 decision establishes that offering a "no contact" order is not clearly unreasonable. As to New College of Florida Board of Trustees, Plaintiff offers no response at all.

### d. Fourth Element: Deliberate Indifference Must "Subject the Plaintiff to Further Discrimination"

For the fourth element, "a Title IX recipient 'may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum <u>cause students to undergo harassment or make them liable or vulnerable to it.</u>'" *Williams v . Bd. of Regents of Univ. Sys. of Ga.*, 477

F.3d 1282, 1295-96 (11th Cir. 2007) (emphasis supplied); *see also Doe v. Univ. of Miami*,

446 F. Supp. 3d 1000, 1006-07 (S.D. Fla. 2020) (same).

It is here that Plaintiff's Title IX claims must fail. Plaintiff's case is that Dr. Williamson acted with deliberate indifference to her disclosure of the alleged sexual assault. Plaintiff's claim fails at that stage of the analysis, and the next stage of the analysis. Plaintiff can only recover for "further discrimination," taking place after the alleged deliberate indifference. However, Plaintiff unenrolled from the university immediately after this conversation. Plaintiff has neither alleged nor evidenced any discrimination taking place afterwards. Therefore, Plaintiff's Title IX claim fails against both New College of Florida and the New College of Florida Board of Trustees.

## B. PLAINTIFF'S STATE LAW NEGLIGENCE CLAIMS

### a. Plaintiff's State-Law Claims Are Barred by the Eleventh Amendment

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amendm. XI. The Eleventh Amendment bars suits against state entities in federal court. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). Eleventh Amendment immunity "deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a

proceeding." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984). The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("We have insisted, however, that the State' consent [to suit against it in federal court] be unequivocally expressed."). "Eleventh Amendment jurisdictional questions can be raised for the first time on appeal.*" Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005)

New College of Florida is a member of the State University System of Florida, an entity created under the Florida Constitution. Fla. Const. Art. 9 § 7. It is a public body, derives its authority from state statute, and is part of the executive branch of state government. Fla. Stat. §§ 1001.71 – 1001.73, 1004.32 (2021). And it is primarily funded with taxpayer dollars. *See* Fla. Stat. §§ 1011.90 – 1011.91 (2021). Moreover, Plaintiff has alleged NCF is a political subdivision of the State. [DE 2 Complaint §§ 4, 5].

"A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990); *see also Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990) ("Evidence that a state has waived sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court."). To be sure, the Eleventh Circuit has ruled that Section 768.28 preserves Florida's immunity from suit in federal court. *E.g., Crisman v. Fla. Atl. Univ. Bd. of Trustees*, 572

19

F.App'x 946, 949 (11th Cir. 2014) (dismissing Florida Age Discrimination in Employment Act suit on Eleventh Amendment grounds). A state may assert Eleventh Amendment Immunity after removal of the case. *Wisconsin Dept. of Corrs. V. Schact*, 524 U.S. 381, 392-93 (1998).

Defendants respectfully request this Court dismiss Plaintiff's state law claims for want of subject matter jurisdiction under the Eleventh Amendment. The Northern District of Florida has dismissed similar negligence claims brought alongside Title IX claims against a state university. *S.B. v. FAMU Bd. of Trsts.*, Case No. 4:16cv613, 2019 WL 11254780, *21 (N.D. Fla. Mar. 1, 2019), *subsequent determination*, 2019 WL 11254779, * 1 (N.D. Fla. Mar. 27, 2019).

### b.  The Majority of Plaintiff's Theories of Negligence are Operational Functions for which the State has not Waived Sovereign Immunity

Section 768.28, *Florida Statutes*, states "the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts . . . ." Fla. Stat. § 768.28(1) (2017). "Nevertheless, certain 'discretionary' governmental functions remain immune from tort liability." *Commercial Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1022 (Fla. 1979). Acts of government can be categorized as "discretionary" and "operational." *See Trianon Park Condo. Ass'n*, 468 So. 2d 912, 918-19 (Fla. 1985).  "[D]iscretionary functions of government are inherent in the act of governing and are immune from suit." *Id.* at 918. Planning level decisions, such as inmate classification, are discretionary activities and cannot form the basis for tort

liability. *See Davis v. State, Dept. of Corr.*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984).  A discretionary function is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999).

The Florida Supreme Court in *Commercial Carrier Corp. v. Indian River County* commended utilization of a four-part test, originally iterated in *Evangelical United Bretheren Church of Adna v. State*, 407 P.2d 440, 445 (Wash. 1965), to determine whether a government act is discretionary. *Commercial Carrier*, 371 So. 2d at 1019 (quoting *Evangelical*, 407 P.2d at 445). By contrast, an act is "operational," if it is "not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2005).

Plaintiff cannot dispute that the development of policies and policing sexual assault and underage drinking are discretionary in nature. The basic government program at issue is keeping students safe. Putting forth policies on sexual assault and underage drinking is essential to the realization of keeping the students safe from those activities. Developing the policies and monitoring students requires basic policy evaluation and expertise. Finally, for the fourth factor, NCF does not dispute it has a general duty to keep its students reasonably safe. The issue in Plaintiff's case is that the students took so many efforts to ensure administrators did not know of the "Tour de

Franzia," and each administrator and the Chief of Police have testified to not knowing of the "Tour de Franzia," at the time.

Plaintiff lists in her Complaint a laundry list of theories of negligence, all of which are too vague to scrutinize in detail. [DE 2 Compl. ¶¶ 30, 42]. Generally speaking, Plaintiff's theories pertain to alleged inadequate policies and policing of underage drinking, generally. Regarding Cheikou Kane, Plaintiff has not brought forth an iota of evidence that NCF should have known that he would sexually assault Plaintiff. The Southern District of Florida, in *Doe v. School Board of Miami-Date County*, has had occasion to visit the scope of Florida's waiver of sovereign immunity in a similar sexual assault case. 403 F. Supp. 3d 1241, 1266-67 (S.D. Fla. Apr. 30, 2019). *Doe* stands for the proposition that it is only the implementation of policies that are operational in nature, while the development of school safety policies and training of staff are discretionary. *See id.* at 1268.

### c.  The Acts of the Unnamed TA Were not Within the Scope and Course of Employment

Plaintiff will most likely base her negligence claims on the alleged unnamed TA that gave Plaintiff her first drink of wine. That is the only non-discretionary function Plaintiff has raised in the evidence. The acts of the unnamed TA directly contradicted NCF's Student Code of Conduct. Most importantly, those actions by the TA were not within the scope and course of her employment. An employer can only be vicariously liable for the acts of its subordinates when those acts fell within the scope and course

of their employment. The TA was certainly not doing her job when she gave Plaintiff wine on the weekend. The party was not school-sanctioned in any way.

"Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee's act, rather than the method of performance thereof, is said to be the important consideration." *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So.2d 748, 751 (Fla. 1st DCA 1985) *cited with approval in McGhee v. Volusia Cnty.*, 679 So.2d 729, 732 (Fla. 1996). Stated another way, only when the employee "steps aside from his employment to ... accomplish some purpose of his own," is the act not within the scope of employment. *City of Miami v. Simpson,* 172 So.2d 435, 437 (Fla. 1965).

> An employee's conduct is within the scope of his employment, where: (1) the conduct is of the kind she was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.

*Levitt v. Iovine*, 2:18-CV-36-FTM-99MRM, 2019 WL 1082381, at *14 (M.D. Fla. Mar. 7, 2019).

Plaintiff cannot produce any evidence that the TA's furnishing of alcohol to her was what the TA was employed to perform. Plaintiff cannot produce any evidence that the conduct occurred within the time and space limits authorized or required. The party took place on the weekend. Plaintiff cannot offer any evidence that the TA's conduct was activated at least in part by a purpose to serve NCF. The TA's conduct

23

was quite the opposite, because it directly defied New College of Florida's Regulations.

The TA's actions are also remote in time from the alleged sexual assault. Several hours passed and multiple supervening events interposed themselves between the time she allegedly received wine from a TA and Plaintiff's alleged sexual assault. Plaintiff participated in the race, drinking along the way, for approximately two (2) hours. At the end of the party, Plaintiff and other participants moved to the benches, and Cheikou Kane approached her with a red Solo cup, and she accepted and drank. [DE 87, 113: 17-23]. More time passed before Plaintiff left with Cheikou Kane. [DE 87, 115: 22-24]. With the multiple interposing events, Plaintiff cannot establish her sexual assault would not have happened but-for receiving that wine from a TA. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1184 (11th Cir. 2003) ("[S]ummary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'").

WHEREFORE, Defendants, NEW COLLEGE OF FLORIDA and NEW COLLEGE OF FLORIDA BOARD OF TRUSTEES, respectfully request that the Court enter final summary judgment in their favor as to each and every one of Plaintiff's claims, or, in the alternative, that Plaintiff's claims be dismissed for lack of subject matter jurisdiction.

RESPECTFULLY SUBMITTED this 16th day of December, 2022.

**QUINTAIROS, PRIETO, WOOD & BOYER, P. A.**

*/s/ Christopher D. Hastings*
**JOHN S. DERR (FBN: 0359025)**
**CHRISTOPHER D. HASTINGS (FBN: 0120104)**
227 North Bronough Street, Suite 7400
Tallahassee, Florida 32301
Telephone:  850-412-1042
Facsimile:  850-412-1043
Email: jderr@qpwblaw.com
Email: christopher.hastings@qpwblaw.com
Email: gail.clark@qpwblaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served via ECF Document Filing System, on this 16th day of December, 2022, to:

Elizete D. Velado, Esq.
Damian Mallard, Esq.
MALLARD PEREZ, PLLC
889 N. Washington Boulevard
Sarasota, Florida 34236
(941) 952-1682
(941) 378-1605(fax)
Fla. Bar. No. 99668
elizete@mallardperez.com
damian@mallardperez.com
Damian@Mallardlawfirm.com
Fla Bar. 882348
Attorneys for Plaintiff

*/s/ Christopher D. Hastings*
ATTORNEY