UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANE DOE,

      Plaintiff,

v.                             Case No: 8:21-cv-1245-CEH-CPT

NEW COLLEGE OF FLORIDA and
NEW COLLEGE OF FLORIDA
BOARD OF TRUSTEES,

      Defendants.
_____/

## O R D E R

This matter comes before the Court on the Motion for Summary Judgment (Doc. 86), filed by Defendants, New College of Florida and New College of Florida Board of Trustees (collectively "Defendants"). In the motion, Defendants request this Court enter summary judgment in their favor on all of Plaintiff's claims. Plaintiff responded in opposition (Doc. 112), and Defendants replied (Doc.116). Because the Court questioned the appropriateness of Plaintiff naming New College of Florida, a public state university, as a Defendant rather than suing New College of Florida solely through its Board of Trustees, the Court issued an Order to Show Cause. Doc. 120. Plaintiff responded and conceded that New College Board of Trustees is the properly named entity. Doc. 121. Upon due consideration of the parties' submissions, including deposition transcripts, stipulated facts, legal memoranda and accompanying exhibits, and for the reasons that follow, Defendant New College of Florida will be dismissed

as an improperly named Defendant. New College of Florida Board of Trustees'
Motion for Summary Judgment (Doc. 86) will be granted, in part, on certain aspects
of Plaintiff's negligence claim, as set forth below.  In all other respects, the motion for
summary judgment will be denied as genuine issues of material fact exist as to
Plaintiff's Title IX claim and the remaining aspects of Plaintiff's negligence claim.

## I.    FACTS and BACKGROUND[1]

### A.    Procedural Background

This is a case of alleged sexual assault of a New College of Florida student by
another New College of Florida student that occurred in May 2017. Plaintiff,
proceeding anonymously as Jane Doe,[2] ("Plaintiff" or "Doe") sues Defendants, New
College of Florida ("NCF"), a public university and member of the State University
System, and New College of Florida Board of Trustees ("NCF Board" or
"Defendant"). Doc. 11. In her four-count complaint filed in state court, Plaintiff asserts
claims for violation of Title IX, 20 U.S.C. § 1681, *et seq.*, against NCF (Count II) and
the NCF Board (Count IV). Additionally, Plaintiff sues Defendants for negligence in
Count I (NCF) and Count III (NCF Board). Defendants removed the action to this
Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 20 U.S.C. § 1681. Doc. 5.

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on
the parties' submissions, including depositions, discovery responses, and exhibits, as well as
the parties' Stipulation of Agreed Material Facts (Doc. 118). For purposes of summary
judgment, the Court presents the facts in the light most favorable to the non-moving party as
required by Fed. R. Civ. P. 56.
[2] Given the nature of this action, the Court granted Plaintiff's motion to proceed under the
pseudonym "Jane Doe" during the pretrial proceedings. Doc. 68. The Court reserved ruling
as to whether Plaintiff will be able to remain anonymous during the trial.

Because NCF is not a properly named entity subject to suit, NCF will be dismissed, as will Counts I and II asserted against NCF. This case will proceed against the college ("New College" or the "College") through its Board of Trustees (Defendant NCF Board).

Pending before the Court is NCF Board's motion for summary judgment on all claims. Doc. 86. In support, Defendant files the depositions of Plaintiff Jane Doe, Rebecca Caskey (Title IX coordinator for New College), Robin Williamson (Dean of Students Affairs), Donal O'Shea (College President), Mark Steir (Senior Associate Dean of Student Affairs), Michael Kessie (Chief of New College Police), Duane Khan (Plaintiff's therapist and College staff member), and Erin Robinson (predecessor Title IX coordinator).[3] Docs. 87, 89, 91–96, 98, 101, 103. Additionally, Defendant files a Facebook posting of the subject event (Doc. 88); Plaintiff's counseling records (Doc. 90); Rebecca Sarver's[4] employment action form (Doc. 97); Plaintiff's answers to interrogatories (Docs. 99, 100); Task Force Recommendations Report (Doc. 102); excerpts of New College's Regulations Manual (Docs. 104, 105); and New College's archived Title IX information (Doc. 106).

Plaintiff filed a response in opposition (Doc. 112), along with copies of news articles about New College's "lost traditions," including the Tour de Franzia, due to the Coronavirus (Docs. 112-1, 112-2), New College Title IX information (Doc. 112-

---

[3] Caskey, Williamson, O'Shea, Stier, Kessie, and Robinson are no longer employed at New College of Florida.

[4] "Sarver" is Rebecca Caskey's maiden name. When hired, she was not married, and thus the employment form is in her maiden name. She now goes by her married name, Caskey.

3), the LinkedIn profile of C. Kane, the alleged assailant/fellow student (Doc. 112-4), and excerpts of the Regulations Manual regarding officers of the Board of Trustees (Doc. 112-5). Defendant replied (Doc. 116), objected to Plaintiff's exhibit of the assailant's LinkedIn profile, and argues that it is inadmissible.

### B.   Stipulated Facts

Plaintiff was a student at New College from August of 2015 to May of 2018. Doc. 118 ¶ 1. At the conclusion of her sophomore year, one of Plaintiff's friends invited her to a party on campus involving other students, named "Tour de Franzia," in which participants ride bicycles both on and off campus while drinking Franzia wine. *Id.* ¶ 2. Plaintiff did not personally tell any administrators about the "Tour de Franzia" before the event, including after she was invited and after she received the Facebook invite. *Id.* ¶ 3.

Duane Khan, Ph.D., Plaintiff's psychological counselor, knew of the Tour de Franzia from students telling him in confidential counseling sessions in the 2013/2014 school year. *Id.* ¶ 4. Rebecca Caskey was the Title IX coordinator from May 7, 2017, until Plaintiff unenrolled from New College in May 2018. *Id.* ¶ 5. Plaintiff knew Caskey was the Title IX Coordinator and had spoken with Caskey about Title IX, generally, on campus; however, Plaintiff did not make a report to Caskey. *Id.* ¶ 6.

Plaintiff could not recall if she specifically asked Dean Williamson to file a Title IX complaint. *Id.* ¶ 7. If a victim makes a complaint, the Title IX Coordinator or its

4

designee must conduct an investigation. *Id.* ¶ 8. Both the complainant and respondent must be informed of any remedial action. *Id.*

The New College Regulations Manual prohibits consumption of alcohol by persons less than 21 years of age anywhere on campus, providing alcohol to anyone under 21, coercing someone into drinking, and putting themselves or others in danger by way of their intoxication. *Id.* ¶ 9.

New College Regulations refer instances of Sexual Battery/Rape and Sexual Misconduct to Title IX for procedures for investigation, adjudication, remedial measures, and related matters. *Id.* ¶ 10. Any person who wishes to file a complaint of discrimination or harassment may do so by submitting a complaint to the Title IX Coordinator or its designee, the Dean of Student Affairs, or the General Counsel. *Id.* ¶ 11.

An investigation must include meeting with the complainant, informing the respondent of the complaint, summarizing the allegations, and providing the respondent with a written notice of the complaint that includes a summary of the allegations of the complaint. *Id.* ¶ 12. The investigator must also collect and review written documents related to the complaint, interview the complainant and respondent, identify, and interview witnesses, and collect other such evidence as may be relevant to the investigation. *Id.* At the conclusion of the investigation, the investigator must prepare a written report. *Id.* The respondent is given an opportunity to respond to the allegations and provide a written response. *Id.* Both sides have the right to have an attorney or non-attorney advisor present during interviews. *Id.* The

report must determine whether any policies have been violated and recommend disciplinary and/or remedial action. *Id*. The Report of Findings may be appealed by either party within ten (10) business days. *Id*. Disciplinary actions must be in accordance with College regulations, collective bargaining agreements or the Student Code of Conduct. *Id*. Disciplinary actions can range from counseling to academic dismissal. *Id*.

### C.    Testimony of Plaintiff

In April 2017 during her sophomore year as a New College student, Plaintiff and a friend successfully ran as co-officers for the New College student government, known as the New College Student Alliance ("NCSA"), and began their term of office in June 2017. Doc. 87 at 17, 36–38.

Plaintiff met the alleged assailant, C. Kane ("Kane"), through similar social circles during her sophomore year. *Id*. at 43. He was one of several NCSA officers during the 2016/2017 school year but was not an officer the same time that Plaintiff served as an officer. *Id*. at 41, 51.

Although the first time Plaintiff participated in the Tour de Franzia[5] was on May 13, 2017, she testified she had heard of it because it was a historic, student-run tradition on campus. *Id*. at 64–65. She was not invited previously because it is typically only for upper-year students, not freshman. *Id*. at 65, 68. She testified that it was common knowledge among upper-class students and even staff that Tour de Franzia

---

[5] Franzia is a brand of boxed wine. Doc. 87 at 70.

would occur. *Id.* at 69. She could not recall how she first heard about the event or who invited her, but she knew she was going to be part of her friend Kayla's team. *Id.* at 65, 69. She knew one of the organizing members was a Bikke Shoppe[6] employee/teacher's assistant ("TA"). *Id.* at 66. Another organizer, who was also a bike shop TA, made the Facebook post invitation. *Id.* at 67. She testified that Bikke Shoppe TAs were full-time students that were paid as New College staff members to work at the shop and help students get their bikes fixed. *Id.* at 68.

The Tour de Franzia took place on a Saturday; it started at the Bikke Shoppe on campus and ended at the Bayfront, which is part of the academic side of campus.[7] *Id.* at 70, 74, 82. There were stops along the way both on and off campus. *Id.* at 70. Students were given two boxes of Franzia wine per team by Bikke Shoppe TAs at the start of the race. *Id.* at 76–77. Bikke Shoppe TAs were at the event, but administrators were not. *Id.* at 73. Plaintiff was 19 years old at the time, and although no one forced her to drink, she felt societal pressure to drink. *Id.* at 86, 89.

Plaintiff ended up on Kane's team with three other students, all of whom she knew. *Id.* at 81. By the end of the event, Plaintiff was intoxicated but was still aware of what she was saying and what was happening. *Id.* at 83. While they were sitting on benches at the Bayfront following the race, at some point, Kane gave her a drink in a

---

[6] The bicycle store on campus is called the Bikke Shoppe. Doc. 87 at 66. It started as an independent study project (ISP), but thereafter remained on campus and was run by the NCSA. *Id.*

[7] It is undisputed that New College policies and procedures prohibited the drinking of alcohol in this area of campus.

red solo cup containing either beer or wine that she drank.[8] *Id.* at 113. Other students were there drinking as well, mostly from glass beer bottles. *Id.* at 114–15. As people started to get up to leave, Plaintiff felt very ill. *Id.* at 115. She was planning to stay the night in a friend's dorm that night. *Id.* at 116. She got up to walk to her friend's dorm, but as she walked she began to go in and out of consciousness. *Id.* at 117–18. Kane assisted her across campus, but rather than taking her to the friend's dorm, he guided her to his apartment-style dorm on New College's campus, stopping first at an on-campus convenience store. *Id.* at 119–120. Once she was in his apartment, she again felt very ill and figured she could sleep it off on his couch. *Id.* at 126. Kane pushed her into his bedroom and sexually assaulted her. *Id.* at 126–28. Sometime after the incident, she experienced symptoms of epilepsy and was formally diagnosed in 2018. *Id.* at 138.

Plaintiff attended New College her junior year in the 2017/2018 school year. She testified that she felt like Kane was stalking her. *Id.* at 135. She lived on campus Spring 2018 semester, and he would show up at her dorm and would wait for her outside of her morning classes. *Id.* Plaintiff was afraid to go outside of her dorm and afraid to go to class. *Id.* She failed academically after the sexual assault because of the incident as well as the stalking. *Id.* at 135–36. In the Fall 2017, Plaintiff told several of

---

[8] Plaintiff later believed some type of drug was in the drink that Kane gave her. Doc. 87 at 121.

her friends she had been assaulted. *Id.* at 136. She also told her therapist, Duane Khan.[9] *Id.* at 137.

Plaintiff testified that members of student affairs, members of the SAS office, her therapist, and administrators were aware of traditions involving under-aged drinking at New College. *Id.* at 91-94. She told Dr. Khan about alcohol being served to under-aged students after the event. *Id.* at 95. She told Dean Williamson in May 2018 about the under-age drinking. *Id.* at 93–94. Plaintiff testified that staff member Tara Centeno, who was a director from the Student Activity and Campus Engagement Office, was aware of alcohol consumption on campus. *Id.*

Plaintiff spoke to Dean Williamson about the sexual assault at the end of the semester in May 2018. *Id.* at 99. She told Dean Williamson about the alcohol consumption that had occurred during Tour de Franzia and that she had been raped by Kane. *Id.* at 99. Plaintiff did not file a written complaint and does not recall if she asked Dean Williamson to file a Title IX Complaint. *Id.* at 100. She never made a formal written complaint regarding the under-age drinking or the assault. *Id.* at 107. She was familiar with Title IX from attending student government conferences. *Id.* at 108. Plaintiff testified she made an oral complaint, and she asked Dean Williamson for help, but the only help the Dean provided was to offer to serve Kane with a no trespassing order on campus for the next year, still allowing Kane to graduate. *Id.* at 101. In her sworn interrogatory answers, Plaintiff similarly states that approximately

---

[9] According to Dr. Khan, Plaintiff never told him the name of her assailant. Doc. 95 at 71.

one week before the scheduled Spring 2018 graduation, she told Dean Williamson that she had been raped on campus, that she was being stalked by the rapist, and that the rapist was about to graduate. Doc. 99 at 15. According to Plaintiff, Dean Williamson's response was that there was nothing she could do now except put in for a "no-contact" order beginning in the Fall of 2018. *Id.*

Immediately after telling Dean Williamson about the sexual assault and being told there was nothing that could be done for Plaintiff now and being offered no support or follow-up from the Dean, Plaintiff unenrolled from New College. Doc. 87 at 99–100; Doc. 99 at 14–15. Plaintiff states she left New College because of the response she received from Dean Williamson when she reported the rape and stalking. Doc. 99 at 14. She never filed a criminal complaint with the New College Police Department or any other police or Sheriff's office. Doc. 87 at 134–35.

Plaintiff also states in interrogatory responses that, after withdrawing from New College, she had a conversation with President Donal O'Shea and told him she was being bullied and sexually harassed and no one was willing to help her which was the reason she was leaving school. Doc. 99 at 15.

### D.    Testimony of Dean Williamson

Robin Williamson, Ph.D. was Dean of Student Affairs at New College from July 2016 through May 2019. Doc. 91 at 17. Dean Williamson's responsibilities included overseeing housing, residential life, student activities, and campus engagement. *Id.* at 21. She was also responsible for overseeing conduct, disability support services, counseling center, health services, and anything that occurred outside

10

the classroom. *Id.* As the Dean of Student Affairs, she had the authority to take corrective action to end discrimination on campus between students. *Id.* at 21–22. She created the Title IX coordinator position on campus for New College, which included an educational component. *Id.* at 30–31. Previously, it was a contracted position. *Id.*

Dean Williamson testified that Resident Advisors (RAs) are employees of the university. *Id.* at 44. If they know about violations of policies that student affairs had in place, they were responsible for reporting the violations. *Id.* at 45. RAs received training from residence hall directors, the senior associate dean, and counseling center staff. *Id.* at 82.

When she interviewed for the position with New College, she heard of New College's culture including drug and alcohol use, but no more than at any other college campus. *Id.* at 47–48. She had heard about the school's history of psychedelic drug use from students in connection with two student deaths, one of whom was an enrolled student, and the student body's interest in finding ways to heal and move forward. *Id.* at 48. She was aware of a task force, implemented before she began, that consisted of administrators, faculty, students, alumni and board members to review New College's alcohol, drug, and substance abuse policies. *Id.* at 49. Her understanding was that the task force was created, at least in part, in response to the two students who died. *Id.* at 50–51.

Dean Williamson testified that bike shop employees were paid by the NCSA from fees paid by students. *Id.* at 70. Dean Williamson testified there was a difference

between school traditions and school-sanctioned events. *Id.* at 89. She was not aware of the student tradition called the Tour de Franzia. *Id.* at 93, 148.

Dean Williamson denied that Plaintiff ever told her about the assault. *Id.* at 133, 174. If Plaintiff had told her and the alleged perpetrator was still an enrolled student, Dean Williamson would have explained the Title IX policy, she would have filed a report, and she would have given Plaintiff her options, including interim measures. *Id.* at 133.

### E.    Evidence Regarding the Tour de Franzia

Dr. Khan became aware of the Tour de Franzia when he first started at New College as a mental health counselor in the 2013/2014 school year. Doc. 95 at 15. He described the Tour de Franzia as a student-run tradition in which students ride their bicycles from house to house or location to location drinking wine. *Id.* at 12. The Tour de Franzia was a student event, not a school event. Doc. 96 at 5. The event did not start the same place every year because the students don't want people to find out about it and "bust it up." Doc. 95 at 12.  He never knew what date it was held because it changed every year. *Id.* at 15. He testified that the Tour de Franzia has never been on a list of approved events by student affairs. Doc. 96 at 30.

Erin Robinson, who was the Title IX coordinator prior to Caskey, never heard of the Tour de Franzia. Doc. 103 at 19. Michael Kessie, former Chief of the New College Police Department, was not familiar with the Tour de Franzia. Doc. 94 at 63. Dr. Mark Stier was not aware of any off-campus or on-campus bicycle drinking events. Doc. 93 at 79. Dean Williamson was not aware of the student tradition called Tour de

Franzia. Doc. 91 at 93. New College President Donal O'Shea testified he was not aware of the Tour de Franzia party. Doc. 92 at 43.

Plaintiff provided a 2020 newspaper article from the Sarasota Herald-Tribune (Doc. 112-1), which was also posted on New College's website (Doc. 112-2), describing the Tour de Franzia as an annual unofficial tradition, "named for the cheap wine New College of Florida bike enthusiasts drink as they ride through the city at the end of each semester." Doc. 112-1 at 2.

### F.   Alcohol and Drug Use at New College

Erin Robinson testified that during her years with New College there were instances of peer pressure leading to underage drinking occurring on campus. Doc. 103 at 23. She testified there can be a link between drinking and sexual assault. Doc. 103 at 29–30.

President O'Shea knew about the tradition of students drinking a shot of alcohol behind the graduation stage. As soon as administration learned of it, they shut it down. Doc. 92 at 62. O'Shea admitted that New College students drank alcohol, but he denied that there was a culture of permitting drinking at New College. *Id.* at 69–70. President O'Shea acknowledged that underage drinking exposes students to an increased risk of sexual assault. *Id.* at 77.

Caskey was the Title IX coordinator for New College. She expressed concerns to the Dean and others in S.A.L.T. (Student Affairs Leadership Team) meetings that situations in which students are under the influence of alcohol and drugs increase the likelihood of sexual assaults, harassment, or stalking. Doc. 89 at 45, 64. The response

she got from the administration was that New College is a very different place and this is the way it is here. *Id.* at 45–46.

Plaintiff's therapist, Dr. Duane Khan, testified regarding a number of school-sanctioned events or parties including a Wall,[10] Kiss Your Crush,[11] and PCP or COUP.[12] New College financially contributed to school-sanctioned parties. Doc. 95 at 18. He also discussed school traditions. One of the traditions was to give students a beer or alcoholic beverage to chug after they get off the stage during graduation. *Id.* at 20. Dr. Khan testified that there was a correlation between substance use on campus at events and sexual assault. *Id.* at 19. When these events would happen, the counseling center would see an uptick in counseling appointments. *Id.* at 20. According to Dr. Khan, "boundary violations happen often." *Id.* Dr. Khan testified there is a bike shop on campus that is often used to host events.[13] *Id.* at 12.

---

[10] Dr. Khan testified a Wall is a social event or party that occurred on the half walls that are in the dormitory areas. Doc. 95 at 9. One example of a Wall is "Underwear Wall" in which someone plays music and students show up to the party in their underwear. Doc. 95 at 10–11.

[11] "Kiss Your Crush" started as a Wall and then changed names. It is a party to teach about consent in which students wear a colored shirt to indicate whether they consent to being kissed. Wearing a green shirt means it is okay to kiss that student. Wearing an orange shirt means that the student needed to be asked before they could be kissed. A student wearing a red shirt signaled "no consent." Doc. 95 at 11.

[12] PCP was an acronym for "Palm Court Party" but, according to Dr. Khan, was also allegedly a nod to the days when New College students did a lot of drugs and PCP. Because people wanted to change the image of the party, it was renamed the "Center of the Universe Party" or "COUP." It generally takes place in the courtyard outside the dorms. Dr. Khan described these events as high-budget parties that the entire student body was invited to attend. Doc. 96 at 16-17.

[13] The Facebook invitation for "Le Tour de Franzia" stated the event would start at "the bike shoppe and end IN the bay." Doc. 88.

### G.    Title IX at New College

In March 2017, Erin Robinson was still listed on New College's website as the Title IX coordinator even though she had not held that position since December 2016. Doc. 112-3. Caskey became the Director of Campus Programs in May 2017; her duties included serving as the on-campus Title IX coordinator. Doc. 97; Doc. 89 at 11, 25. She testified that the New College students expressed a lot of distrust with the administration, and the students did not believe the administration was taking things as seriously as they should in investigating Title IX complaints. Doc. 89 at 13–14.  She did not receive all the support she felt she needed in her role as Title IX coordinator. *Id.* at 31. When she started, Caskey was made aware of prior incidents involving Title IX investigations including a student who was expelled without being afforded due process. *Id.* at 81. Caskey testified about two incidents in which Dean Stier sent confidential information regarding a student's Title IX complaint to a student named Becca instead of to Rebecca Caskey, and Dean Williamson defended Stier's conduct although it was a policy violation. *Id.* at 84–86. Dean Williamson also purportedly interfered with one of Caskey's investigations by pressuring her to find a perpetrator guilty because the victim's parents were calling the school. *Id.* at 87–88. Caskey testified of another occasion in which President O'Shea tried to intercede in a Title IX investigation and asked her to amend her findings after she found a student guilty of rape and suspended him near the time of his graduation. O'Shea purportedly asked her to undo the suspension because the student was about to graduate, and enrollment and retention numbers were low. *Id.* at 89–90.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III.    DISCUSSION

### A.    Dismissal of Defendant New College of Florida

The capacity of an entity to be sued is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(3).  The Florida Constitution designates that a "board of trustees shall administer each public university." Art. IX, § 7(b), Fla. Const. Florida courts acknowledge that the Florida Constitution empowers the Florida Legislature to authorize suits against the state or any of its agencies. *See Daniels v. State Rd. Dep't.*, 170 So. 2d 846, 849 (Fla. 1964) ("[m]any state agencies, although purely public bodies, are or have been in the past designated as a 'body corporate' by statute and given many of the attributes of a private corporation, such as the right to sue and be sued"). In pertinent part, Fla. Stat. § 1001.72(1), provides that each state University's Board of Trustees "shall be a public body corporate . . . with all of the powers of a body corporate, including the powers to . . . sue and be sued, to plead and be impleaded in all courts of law or equity . . . ."

This Court and other district courts in Florida have held that the university is not the proper entity to be sued, but rather, an action against a Florida state university proceeds in the name of the university's Board of Trustees. *See* Doc. 120 at 2 (collecting cases). Plaintiff responded to the Court's Order to Show Cause, acknowledging that New College of Florida is appropriately subject to dismissal and requesting the case proceed against the Board of Trustees. Doc. 121. Accordingly, Defendant New College of Florida and the counts against it (Counts I and II) will be dismissed.

### B.    Objection to Plaintiff's Exhibit

In opposition to Defendant's summary judgment motion, Plaintiff offered as an exhibit a document which purports to be a screenshot of the LinkedIn social media profile of the assailant. Doc. 112-4. In its reply, Defendant raises an objection, pursuant to Fed. R. Civ. P. 56(c)(2), to the admissibility of Plaintiff's exhibit because the exhibit has not been authenticated and is inadmissible hearsay. In pertinent part, Rule 56(c)'s summary judgment procedures provide: "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Because Plaintiff fails to present any testimony or affidavit to authenticate the social media profile and the document is otherwise inadmissible hearsay to which no exception applies, Defendant argues that Plaintiff's submitted fact—that Kane was present on campus in the 2018-to-2020-time frame—does not rely on admissible evidence. And therefore it should not be considered by the Court in ruling on the motion for summary judgment.

The Eleventh Circuit recently considered this issue in *Mohammed v. GHX Global Healthcare Exchange Inc.*, No. 21-10108, 2022 WL 1615925, at *2 (11th Cir. May 23, 2022). There, the appellate court affirmed the district court's exclusion of a LinkedIn page offered in opposition to summary judgment because the document was unauthenticated. Evidence can be properly authenticated if there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The party offering the evidence has the burden of authenticating the evidence. *See United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1033 (11th Cir.

18

2019), *cert. denied*, 140 S. Ct. 858 (2020). This may be done by testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1). Here, Plaintiff presents no testimony or affidavit to authenticate the LinkedIn profile. Even if Plaintiff was able to produce a witness to authenticate it, however, it would still be excluded as hearsay, unless an exception to the hearsay rule applies. Plaintiff has not argued that an exception applies. *See Mohammed*, 2022 WL 1615925, at *2 (finding that LinkedIn page was inadmissible hearsay because it was an out-of-court statement that the party was offering for the truth of the matter). Defendant's objection to the LinkedIn profile page is sustained, and the Court has not considered the exhibit in ruling on the instant motion.

### C.    Timeliness of Motion for Summary Judgment

In response to Defendant's motion for summary judgment, Plaintiff renews (by way of a footnote) her objection to the motion as untimely. Doc. 112 at 1, n.1. Plaintiff initially raised this objection in a motion to seal (Doc. 59) in which she challenged the appropriateness of Defendant's filing a "placeholder" in lieu of timely filing a summary judgment motion or seeking an extension of the dispositive motion deadline. Plaintiff's response to Defendant's request to file its motion out of time raised similar arguments. Doc. 64.

The Court has already addressed this timeliness issue. In its December 5, 2022, order, the Court found that Defendant properly followed M.D. Fla. Local Rule 1.11(d)'s procedure related to filing a placeholder. However, the Court noted Defendant should have simultaneously sought an extension of the dispositive motion deadline or Defendant could have filed the placeholder earlier. Be that as it may,

Plaintiff failed to demonstrate prejudice in her ability to respond to the motion and did not otherwise show that Defendant's delay was intentional. Similarly, in her response to the dispositive motion she does not demonstrate prejudice by the late filing, nor does she offer any other facts or legal argument to support a reversal of the Court's prior ruling. Plaintiff's cursory objection to the timeliness of the Defendant's motion does not warrant denial of the motion for summary judgment on that basis. The Court will consider the motion on its merits.

### D.    Title IX Claim Against New College

Plaintiff sues the NCF Board under Title IX, 20 U.S.C. § 1681(a), alleging she was subjected to a hostile educational environment because she was raped on campus by another New College student, Defendant lacked policies and procedures to prevent and properly investigate the reported rape, that the rape was so severe and objectively offensive that it deprived Plaintiff of access to educational opportunities, and Defendant acted with deliberate indifference toward the Plaintiff in failing to take action to protect the Plaintiff. Doc. 11 at 10–11.

Title IX provides, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized the existence of an implied private right of action to enforce the mandates of Title IX. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979).

Student-on-student sexual assault, as alleged here, falls within the ambit of Title IX liability. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) ("Having previously determined that 'sexual harassment' is 'discrimination' in the school context under Title IX, we are constrained to conclude that student-on-student sexual harassment, if sufficiently severe, can likewise rise to the level of discrimination actionable under [Title IX]."). However, the Supreme Court applies a more rigorous standard when a Title IX plaintiff seeks damages against a school for student-on-student harassment, as opposed to harassment by a teacher. *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) (citing *Davis*, 526 U.S. at 650–53).

In *Williams v. Board of Regents of the University System of Georgia*, the Eleventh Circuit identified four elements a plaintiff must prove to recover for peer harassment under Title IX: First, "the defendant must be a Title IX funding recipient." 477 F.3d 1282, 1293 (11th Cir. 2007). Second, "an 'appropriate person' must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred." *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). Third, "a funding recipient is liable for student-on-student harassment only if 'the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities.'" *Williams*, 477 F.3d at 1293 (quoting *Davis*, 526 U.S. at 633). Fourth, "the discrimination must be 'so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit.'" *Williams*,

21

477 F.3d at 1293 (quoting *Davis*, 526 U.S. at 633).[14] The Court addresses the elements below.

      *1.     No Dispute that Plaintiff Satisfies the First Element: Funding Recipient*

New College is a state public university. There is no dispute, and Defendant's motion does not challenge (Doc. 86 at 12), that Plaintiff satisfies the first element. It is clear that New College receives federal funding as contemplated by 20 U.S.C. § 1681.

      *2.     Second Element: Appropriate Person with Actual Knowledge*

The NCF Board argues it is entitled to summary judgment on Plaintiff's Title IX claim because Plaintiff cannot establish that an appropriate person on behalf of New College had actual knowledge of the sexual assault. As a preliminary matter, to establish actual notice, a plaintiff need not establish the school was aware of prior harassment of the plaintiff herself. *See Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010) (citing *Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir.

---

[14] Citing to the Eleventh Circuit's unpublished opinion in *Garrett v. University of South Florida Board of Trustees*, 824 F. App'x 959 (11th Cir. 2020), the parties analyze the Title IX claim under a six-element test: (1) that defendant is a federal funding recipient; (2) that an "appropriate person" must have "actual knowledge of discrimination in the recipient's programs;" (3) that defendant responded with deliberate indifference to the known harassment; (4) the deliberate indifference "subjected the plaintiff to further discrimination;" (5) the harassment is "severe, pervasive, and objectively offensive;" and (6) the harassment 'effectively bar[s] the victim's access to an educational opportunity or benefit." Doc. 86 at 11; Doc. 112 at 16 (citing *Garrett*, 824 F. App'x at 964). The elements are the same as discussed in the *Davis* and *Williams* cases. In 2015, the Eleventh Circuit applied the *Williams*' four-part test as five elements, breaking the fourth element into two parts: (a) that the discrimination is severe, pervasive, and objectively offensive, and (b) that it effectively bars the victim's access to an educational opportunity. *See Hill v. Cundiff*, 797 F.3d 948, n.11 (11th Cir. 2015). In 2020, the Eleventh Circuit broke the third deliberate indifference element into two elements— considering first, whether defendant responded with deliberate indifference to the known harassment, and second, whether the deliberate indifference subjected plaintiff to further discrimination. *Garrett*, 824 F. App'x at 964.

2001) ("We note that a Title IX plaintiff is not required to demonstrate actual knowledge that a particular student was being abused.). However, to avoid summary judgment, Plaintiff must offer some evidence of actual notice to an appropriate person that is sufficient to satisfy the second prong.

The Supreme Court defines an "appropriate person" to be, "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290. The Supreme Court in *Gebser* expressly rejected an interpretation of Title IX that imposes liability on a school under a theory of imputed liability (*i.e.*, respondeat superior or vicarious liability) or constructive notice. *See* 524 U.S. at 280–90. Rather, the person with actual knowledge must be an "appropriate person" within the funding recipient's system, meaning that the person must be an official of the recipient entity who "at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Gebser*, 524 U.S. at 290. The school official must be "high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." *Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999).

a.   Dean Williamson

Dean Williamson is an appropriate person who, according to Plaintiff, had actual knowledge. Plaintiff testified she reported the rape to Dean Williamson in May 2018, approximately one week before her assailant was to graduate. According to Plaintiff, after telling Dean Williamson about being sexually assaulted in May 2017

and being stalked by the assailant over the past school year, Plaintiff asserts that Williamson told her there was nothing she could do for Plaintiff right now, but that she could put in for a no-contact order beginning in the Fall of 2018. Plaintiff immediately disenrolled from New College following that conversation.

It is undisputed that Dean Williamson is an official with authority to take corrective action to end harassment at New College. Defendant acknowledges that Dean Williamson would be an appropriate person, "but for the fact that all of the alleged Title IX violations had already occurred and Plaintiff alleges no further violations." Doc. 86 at 15. This argument presents a narrow view of the evidence and fails to consider the facts in a light favorable to Plaintiff.

Dean Williamson denies that Plaintiff ever told her about the assault. However, this is a disputed material fact that cannot be resolved on the instant motion. In a light favorable to the Plaintiff, as soon as Dean Williamson was told about the attack, Dean Williamson had actual knowledge of it. *See S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trustees*, No. 4:16CV613-MW/CAS, 2019 WL 11254780, at *7 (N.D. Fla. Mar. 1, 2019) (finding that "once a student reports to the 'appropriate person' at a school that he/she was sexually assaulted by another student, at that moment, the 'actual knowledge' element for student-on-student harassment is satisfied," but noting, "that does not end the inquiry; a plaintiff must still prove the remaining *Williams* elements."). Defendant's argument that no further Title IX violations were alleged or occurred ignores Plaintiff's allegations that Defendant violated Title IX in its failure to properly investigate the rape, abuse, and harassment reported, and ignores Plaintiff's

24

testimony that the Dean told her there was nothing that could be done now, even though the assailant was still an enrolled student. Dean Williamson is an appropriate person. Given the conflicting testimony of whether Plaintiff told Dean Williamson about the assault and whether Dean Williamson said there was nothing that could be done for Plaintiff now, a disputed issue of material fact exists regarding the College's actual knowledge, precluding summary judgment in Defendant's favor.

As the parties' pleadings raise alternative arguments related to whether other individuals or matters give rise to a finding of actual knowledge by an appropriate person, the Court addresses those arguments below.

### b.     Neither an RA nor a TA is an "Appropriate" Person

Plaintiff identifies the name of one resident assistant (RA) who was at the Tour de Franzia party, along with the names of four other RAs who received an invitation to the party. Doc. 99 at 13. She referenced (without naming) New College employees (who were TAs that worked at the campus bike shop) that gave her alcohol at the event. However, on the record before the Court, knowledge by RAs or TAs does not satisfy Plaintiff's burden of establishing an appropriate person had actual knowledge of harassment in New College's programs for purposes of creating a genuine issue of material fact as to New College's Title IX liability. While the RAs and TAs may be mandatory reporters under Title IX, Plaintiff offers no evidence that she told any RA or TA about being sexually assaulted or stalked or that they otherwise were aware. Nor has she provided any evidence that any RA or TA would be considered an official of New College with the "authority to address the alleged discrimination and to

institute corrective measures on the [university's] behalf." *Gebser*, 524 U.S. at 290. *See*
*Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) (Eleventh Circuit held a teacher's
aide was not an "appropriate person."). Similarly, here, an RA or TA would not be an
"appropriate person" for Title IX purposes. Plaintiff does not identify the TA that
purportedly gave her alcohol at the Tour de Franzia event, let alone any information
about the person to indicate that he or she would be an official "high enough up the
chain-of-command" to be an "appropriate person." *See Floyd*, 171 F.3d at 1264–65.
Thus, Plaintiff fails to establish a genuine issue of material fact as to an appropriate
person with actual knowledge, relating to the TAs or RAs.

      c.    General Knowledge of Excessive Drinking

Although most of the New College administrators who were deposed testified
that they had no knowledge of the Tour de Franzia,[15] Plaintiff has presented extensive
testimony of numerous New College administrators who admit there is underage
drinking by New College students and that administrators are aware that alcohol use
increases the likelihood of sexual assaults. However, Plaintiff's argument that a
pervasive culture of known drug and alcohol use at New College and the university's
awareness of such, standing alone, is insufficient to establish Title IX liability. *See, e.g.,*
*Shank v. Carleton Coll.*, 232 F. Supp. 3d 1100, 1109 (D. Minn. 2017) ("tolerating

---

[15] Of the New College officials deposed–O'Shea, Williamson, Caskey, Robinson, Kessie, and
Stier–all denied knowledge of the Tour de Franzia. The one individual who testified to being
aware of the Tour de Franzia was Plaintiff's counselor, Dr. Kahn, who learned of the event
from counseling sessions with students. In contrast, Plaintiff has offered an article that
appeared on New College's website specifically discussing the historic annual tradition
referred to as the Tour de Franzia.

students' misuse of alcohol—even with knowledge that such misuse increases the risk of harmful behaviors such as sexual assault—is simply not the same thing as actual knowledge of sexual assault").

        d.     President O'Shea

After Plaintiff unenrolled from New College, she had a conversation with President O'Shea wherein she told him that she was bullied and sexually harassed and no one from the university was willing to help her, which is why she left. Doc. 99 at 15. Plaintiff's conversation with President O'Shea does not satisfy the actual knowledge requirement because Plaintiff did not relay the information to President O'Shea until *after* she had unenrolled from New College.[16]

        e.     Dr. Duane Khan

Plaintiff told her counselor Dr. Khan about the rape, but he is not an appropriate person because he is exempt from the Title IX reporting requirements. Doc. 95 at 110.

        f.     Title IX Coordinator

Plaintiff submits that when this incident occurred, New College had the wrong contact information on its website listing Dr. Erin Robinson as the Title IX

---

[16] The NCF Board's argument that the president of the university is not an "appropriate" person as to the Plaintiff's claim against the university misses the mark. First, the NCF Board relies on the holding in *Williams*, which upheld dismissal of the Board of Regents because the UGA president was not a member of the defendant, "Board of Regents of the University System of Georgia." 477 F.3d at 1294. Here, O'Shea is a member and officer of the NCF Board. But, importantly, in Florida (unlike Georgia), the claim against a state university is brought through its Board of Trustees. Thus, knowledge of university officials, particularly the president of the university, is knowledge of the defendant university. That said, Plaintiff did not tell O'Shea until after she had left New College.

coordinator, even though her tenure in that role ended in December 2016. To the extent Plaintiff is arguing Title IX liability based on New College's failure to have updated information on its website, the argument is unavailing on this record. It is undisputed that Plaintiff was familiar with the school's Title IX policies and procedures and the identity of Caskey as the Title IX coordinator through Plaintiff's involvement with the NCSA. Plaintiff spoke to Caskey regarding Title IX issues, and admittedly never made a formal (or informal) Title IX complaint to Caskey regarding the assault or stalking. Additionally, the email address listed on the website was still being monitored even though Erin Robinson was no longer in the role of Title IX coordinator. Lastly, Plaintiff does not contend that she made any attempt to contact the Title IX coordinator but was unsuccessful due to incorrect contact information.

### 3.  Third Element: Deliberate Indifference

In addition to requiring that an appropriate person have actual notice of the assailant student's misconduct, "a Title IX plaintiff must show that the official was deliberately indifferent to that misconduct." *Doe v. Sch. Bd. of Broward County*, 604 F.3d at 1259 (citing *Gebser*, 524 U.S. at 277). In essence, Title IX's premise "is an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. In its recent unpublished opinion in *Garrett v. University of South Florida Board of Trustees*, 824 F. App'x 959 (11th Cir. 2020), the Eleventh Circuit separated the third element into two questions: (a) whether a funding recipient "respond[ed] with deliberate indifference to the known acts of harassment in its programs," *id.* at 964 (citing *Davis*, 526 U.S. at 633); and (b) whether the recipient's deliberate indifference "subjected the

plaintiff to further discrimination." *Garrett*, 824 F. App'x at 964 (citing *Williams*, 477 F.3d at 1296). On these issues, given the conflicting testimony, summary judgment is due to be denied.

a.      Responding with Deliberate Indifference

A funding recipient is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Williams*, 477 F.3d at 1296 (quoting *Davis*, 526 U.S. at 648). "Title IX requires that the plaintiff prove that the deliberate indifference occurred in response to discrimination she faced." *Williams*, 477 F.3d at 1295 (citing *Davis*, 526 U.S. at 633).

Defendant argues that Plaintiff's version of events does not amount to deliberate indifference because, assuming the facts in a light favorable to the Plaintiff, Dean Williamson's assurance of a no-contact order is not unreasonable. Doc. 86 at 17. Defendant relies on the Eleventh Circuit's finding in *Garrett* that USF's offering a "no contact" order and deferred suspension of the perpetrator, if he accepted responsibility, was not clearly unreasonable. 824 F. App'x at 965. Critically here, unlike in *Garrett*, there was no investigation, no deferred suspension, and no acceptance of responsibility. Rather, the assailant was permitted to graduate. According to Plaintiff, the only offer by Dean Williamson was the issuance of a "no contact" order in the Fall semester.

Defendant next argues that Kane was approximately one week from graduating, and New College would have to allow time for an investigation and an appeal, while also allowing Kane to be represented by counsel. Thus, Defendant urges the interim

measure of a "no-contact" order is not clearly unreasonable. The Court disagrees. In a light favorable to Plaintiff, she relayed to the Dean that she was raped a year ago and stalked by Kane since then. At the time Plaintiff told the Dean about this in May 2018, Kane was still a student at New College. While the issuance of a "no contact" order is a recognized interim measure under New College's regulations (Doc. 105 at 7), the Dean's (1) failure to conduct any investigation, (2) statement that there was nothing she could do now (in May 2018 while the assailant was still a student) and, (3) offer only to issue a "no contact" order in the Fall of 2018 would be unreasonable under the circumstances. Even when deposed, Dean Williamson testified that if she had been told, she would have never said there is nothing she could do. According to Dean Williamson, if Plaintiff had told her what happened and if the alleged perpetrator was still an enrolled student, Dean Williamson would have explained the Title IX policy, she would have filed a report, and she would have given Plaintiff her options, including interim measures. It is undisputed that no investigation was initiated, or case file opened. Viewing the allegations in the light most favorable to Plaintiff, as the Court must, Dean Williamson had the authority to address the harassment and institute corrective measures on Plaintiff's behalf, but did not.

The *Garrett* court noted that in "cases where [the Eleventh Circuit] has found potential Title IX liability for student-on-student harassment, the school responded to a report of sexual assault by effectively doing nothing." *Garrett*, 824 F. App'x at 965. Not initiating an investigation, telling the victim that there's nothing that can be done now while the assailant is still a student, and only offering a "no contact" order in

three to four months, after the assailant graduates, is effectively doing nothing. Accepting Plaintiff's testimony as true, Williamson's lack of response was unreasonable and therefore deliberately indifferent.

      b.    Further Discrimination

The deliberate indifference asserted must subject the plaintiff to further harassment; that is, it must cause the Title IX plaintiff to undergo harassment or make the student liable or vulnerable to it. *Davis*, 526 U.S. at 644; *Williams*, 477 F.3d at 1296.

The NCF Board argues that because Plaintiff immediately unenrolled from the university, she was not subjected to further harassment. "Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment. A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Davis*, 526 U.S. at 644. Defendant essentially argues that, even considering the facts in a light favorable to the Plaintiff, it could take no remedial action because Plaintiff unenrolled. But, the Eleventh Circuit recognizes that a school's "clearly unreasonable response causes students to undergo harassment or makes them more vulnerable to it." *Hill*, 797 F.3d at 973 (citing *Williams*, 477 F.3d at 1295–96). While Plaintiff may not have waited around to be subjected to further assault or stalking by Kane, New College's purported response of doing nothing while Kane was still a student arguably made her feel more vulnerable to it. "Recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's

disciplinary authority." *Davis*, 526 U.S. at 646–47. At the time Plaintiff purportedly told Dean Williamson in May 2018, the assailant was still under the College's disciplinary authority. Plaintiff submits the failure to initiate the Title IX investigation or do anything in response to her complaint subjected her to further discrimination and lost educational opportunities. Defendant argues, in reply, that Plaintiff's decision to unenroll does not mean she underwent further sex-based discrimination as she never alleged a fear of encountering her assailant on campus after her conversation with the Dean. Plaintiff argues that Dean Williamson's lack of response left her feeling frightened, unsafe, and as if there was nothing the College would do to protect her from the assailant. In evaluating whether the Defendant's conduct was deliberately indifferent and whether that indifference subjected the plaintiff to further discrimination or made her more vulnerable to it, the jury will necessarily have to resolve the parties' disputed versions of the facts, and thus summary judgment is due to be denied.

4.   *Fourth Element: Harassment is Severe, Pervasive and Objectively Offensive Such that it Deprives Student of Educational Opportunity*

The *Williams* court described the fourth element as requiring the discrimination to be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Williams*, 477 F.3d at 1293 (quoting Davis, 526 U.S. at 633). In *Hill v. Cundiff*, the Eleventh Circuit broke that element into separate elements: (a) "Was the sexual harassment and discrimination Doe faced, of which the Board had knowledge, severe, pervasive, and objectively offensive?"; and

32

(b) "Did the Board's deliberate indifference to the harassment and discrimination effectively bar Doe's access to an educational opportunity or benefit?" 797 F.3d at 970 n.11, 972, 975. Defendant indicates that it is not challenging these issues on the instant motion. Doc. 86 at 12.

As a genuine issue of material fact exists regarding a violation of Title IX, Defendant's motion for summary judgment will be denied as to Count IV.

### E.    State Law Claim

In Count III of her Complaint, Plaintiff sues New College Board of Trustees for negligence. She alleges that she was an invitee on the university's premises, that Defendant owed her a duty to provide a safe environment and keep her safe, and that Defendant breached that duty, causing her damages. Specifically, Plaintiff claims that Defendant breached its duty of care to her through the following acts and omissions: (a) Failing to prevent the Plaintiff from being sexually assaulted on campus; (b) Failing to develop and implement adequate policies and procedures to prevent sexual, physical, and mental abuse; (c) Failing to develop and implement adequate policies and procedures to prevent underage drinking on campus; (d) Failing to enforce the school's own policies and procedures and the prevention of abuse of students, including sexual abuse; (e) Failing to enforce the school's own policies and procedures and the prevention of underage drinking; (f) Failing to keep the Plaintiff free from sexual, physical, and mental abuse from a student who was known to the school, or though the exercise of reasonable care, should have been known to the school, to engage in such acts of abuse; (g) Failing to provide adequate and proper supervision

of students, in order to prevent sexual, physical, and mental abuse of the students; (h) Failing to provide adequate and proper supervision of students, in order to prevent underage drinking; (i) Failing to provide sufficient and adequately trained staff and teachers in order to protect the students, including the Plaintiff, from sexual, physical and mental abuse, and rape; (j) Failing to implement or enforce the prohibition of alcohol use on campus; (k) Failing to adequately respond to the report of rape once it was made; (l) Failing to properly investigate the report of rape once it was made; and (m) Failing to implement or enforce policies and procedures to address sexual assault and rape on campus; (n) Failing to provide sufficient and adequately trained staff and teachers in order to protect the students, including the Plaintiff, from being subjected to a hostile learning environment; (o) Creating a hostile learning environment by requiring Plaintiff to continue attending classes with her rapist; and (p) Otherwise failing to provide for the safety and well-being of the Plaintiff. Doc. 11 ¶ 42.

Defendant NCF Board argues that Plaintiff's state-law claims are barred by Eleventh Amendment immunity, which precludes state entities from being sued in federal court. Where a state entity voluntarily invokes the jurisdiction of the federal court, however, as Defendant has done here by removing the case from State to federal court, the State's conduct of removing the case to federal court waives its Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619–24 (2002) (observing the anomaly or inconsistency "for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity,

thereby denying that the 'Judicial power of the United States' extends to the case at hand").[17]   Thus, the Court rejects NCF Board's Eleventh Amendment immunity argument.

The NCF Board alternatively argues that New College is entitled to state sovereign immunity under Fla. Stat. § 768.28 as to Plaintiff's negligence claims or that it is entitled to summary judgment because the non-discretionary conduct of the TA giving wine to the Plaintiff was not within the scope of the TA's employment with New College. Doc. 86 at 21–24. Plaintiff responds that sovereign immunity does not apply because her claims allege negligence related to operational, not planning-level, functions. She contends there is sufficient evidence in the record to support a finding by a reasonable jury that Defendant failed to act with reasonable care. Doc. 112 at 34–39.

The State of Florida has waived sovereign immunity for liability for torts. Fla. Stat. § 768.28(1) ("the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts . . . ."). However, governmental functions which are "discretionary" remain immune from tort liability. *Trianon Park Condo. Ass'n*

---

[17] Defendant's reliance on *Wisconsin Department of Corrections v. Schact*, 524 U.S. 381, 392–93 (1998), for its argument that Eleventh Amendment immunity still applies, even after a state entity defendant removes a case to federal court (Doc. 86 at 20), is misguided. Justice Kennedy's concurrence in *Wisconsin* expressly points out that the Supreme Court "neither reached nor considered the argument that, by giving its express consent to removal of the case from state court, Wisconsin waived its Eleventh Amendment immunity. Insofar as the record shows, this issue was not raised in the proceedings below[.]" *Id.* at 393 (J. Kennedy concurring). Further, Justice Kennedy encouraged the Court to consider the question in the future. *Id.* at 364. The Court answered the question four years later in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 619–24 (2002).

*v. City of Hialeah*, 468 So. 2d 912, 918–19 (Fla. 1985) (holding that "discretionary functions of government are inherent in the act of governing and are immune from suit").

Florida courts apply a four-part test to determine whether a government's act is considered discretionary:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Commercial Carrier Corp. v. Indian River Cty.,* 371 So. 2d 1010, 1019 (Fla. 1979) (citation omitted). "[I]f all the questions can be answered in the affirmative, then the governmental conduct is discretionary and 'nontortious.'" *Trianon Park Condo.*, 468 So. 2d at 918. Courts applying this test have concluded, in general, that a government's acts that are discretionary in nature are immune from liability, whereas conduct that is considered operational, that is, how policies and plans will be implemented, is not immune. *See, e.g., Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) ("Conversely, an 'operational' act is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented.").

36

Several of the theories Plaintiff sues under directly implicate Defendant's discretionary conduct by challenging the College's enactment of policies and procedures. To the extent that Plaintiff bases her negligence claim on theories related to Defendant's failure to develop or enact policies and plans, such conduct is immune from liability and Defendant is entitled to summary judgment as it relates to those claims because Plaintiff's challenges inappropriately entangle "in fundamental questions of policy and planning," for which governments are immune. *Dep't of Health and Rehab. Serv. v. Yamuni*, 529 So.2d 258, 260 (Fla. 1988).

Specifically, in paragraphs 42(b) and (c) of the Complaint, Plaintiff alleges: (b) a failure to develop adequate policies and procedures to prevent sexual, physical, and mental abuse; and (c) a failure to develop adequate policies and procedures to prevent underage drinking on campus. Doc. 11. The development of policies and procedures is a discretionary, planning-level, function that is immune from suit, and Defendant is entitled to summary judgment in its favor on this theory of Plaintiff's negligence claim. However, to the extent Plaintiff also asserts in those paragraphs that Defendant failed to enforce or implement such policies and procedures—also referenced in paragraphs 42(d), (e), (j), and (m)—that conduct would be operational in nature, which is not immune.

In paragraph 42(f) of her Complaint, Plaintiff alleges Defendant failed to keep the Plaintiff free from sexual, physical, and mental abuse from a student who was known to the school, or through the exercise of reasonable care should have been known to the school, to engage in such acts of abuse. Defendant argues that Plaintiff

fails to bring forth any evidence regarding the assailant to demonstrate that the NCF Board knew or should have known that Kane would sexually assault Plaintiff. In her response, Plaintiff fails to rebut this argument. Based on the Court's review of the evidence, there is no indication that a New College official had any prior knowledge regarding Kane or that they should have known he would engage in such acts of abuse. Defendant is entitled to summary judgment as it relates to a theory of negligence predicated on any prior actual or constructive knowledge by Defendant regarding Kane as described in paragraph 42(f) of the Complaint.

As Defendant's motion points out (Doc. 86 at 22), Plaintiff's Complaint sets forth a "laundry list" of theories of negligence. While Defendant blanketly claims the list is too vague to scrutinize in detail, it is Defendant's burden on its motion for summary judgment to establish that no genuine issue of material fact exists as to Plaintiff's negligence claim. Other than the immunity afforded to Defendant based on its discretionary conduct in developing or enacting policies, identified above, and the lack of evidence of Defendant's prior knowledge of Kane, Defendant fails to develop any argument related to the other aspects of Plaintiff's negligence claim, except to argue that the College is not vicariously liable for the conduct of a TA giving alcohol to the Plaintiff. In a light favorable to Plaintiff, there was under-age drinking on the College campus of which the administration knew. There were RAs and TAs that had an obligation to report under-aged drinking but failed to do so. Genuine issues of material fact exist as to whether the College was negligent in failing to enforce its alcohol and drug policies and whether that failure resulted in Plaintiff's injuries.

Further, as discussed in the section above, there are genuine issues of material fact regarding the College's lack of investigation and response to the report of rape when Plaintiff made her complaint in May 2018.

Defendant's motion for summary judgment is denied as to Plaintiff's negligence claim, except as otherwise set forth in this Order. The Court concludes that Defendant is immune from tort liability associated with the development of the policies and procedures identified in paragraphs 42(b) and (c) of the Complaint. Additionally, Defendant is entitled to summary judgment as to the theory of negligence alleged in paragraph 42(f) of the Complaint.

Accordingly, it is

**ORDERED**:

1.      Defendant New College of Florida is **DISMISSED** as an improperly named Defendant and Counts I and II of the Complaint are dismissed.

2.      Defendant's Objection to Plaintiff's LinkedIn profile exhibit (Doc. 112-4) is **SUSTAINED**.

3.      Defendant New College of Florida Board of Trustees' Motion for Summary Judgment (Doc. 86) is **DENIED** as to Plaintiff's Title IX claim because genuine issues of material fact exist.

4.      Defendant New College of Florida Board of Trustees' Motion for Summary Judgment (Doc. 86) is **GRANTED, in part,** as to Plaintiff's negligence claim to the extent that the NCF Board is immune from liability for discretionary

planning-level functions related to the enactment of policies and procedures. The motion is also **GRANTED** as to Plaintiff's claim that Defendant was negligent in failing to keep the Plaintiff free from sexual, physical, and mental abuse from a student who was known to the school, or through the exercise of reasonable care should have been known to the school, to engage in such acts of abuse, as Plaintiff has presented no evidence to support this claim. In all other respects Defendant's Motion for Summary Judgment is **DENIED**.

5.      On or before October 12, 2023, the parties shall file a joint notice on CM/ECF which identifies their availability for trial between now and September 30, 2024. Upon review of that notice, the Court will reschedule this case for trial.

**DONE AND ORDERED** in Tampa, Florida on September 28, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

40